**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

DEAN C. BOYD                                                            PLAINTIFF

v.                                                              No. 4:21CV35-GHD-JMV

BARRY SPENCER, ET AL.                                                   DEFENDANTS

**MEMORANDUM OPINION**

The court issued a default judgment [51] under Fed. R. Civ. P. 55(b)(2) in favor of the plaintiff against defendant Dr. James Glisson, who was served with process, but did not answer or respond. Under Rule 55(b)(2), the court may determine the amount of damages *and establish the truth of any allegation by evidence. See* Rule 55(b)(2)(B) (amount of damages); 55(b)(2)(C) (truth of an allegation) (emphasis added). The court then issued an order setting a deadline for the plaintiff to brief the issue of damages. The plaintiff submitted three such briefs – one filed within the deadline, two outside it. Those three briefs did not, however, provide the court with sufficient information to determine liability or the appropriate amount of damages against Dr. Glisson, and the court directed Boyd to provide more information, including medical records. Boyd did so, providing additional information and lengthy, but incomplete, medical records totaling over 650 pages. In those briefs and supporting documents, Boyd alleges that, in an act of retaliation, Dr. Glisson ordered Physical Therapist Assistant (PTA) Barry Spencer to treat him very roughly during their sessions – and that, for just over a month, Spencer did so, injuring Boyd's neck and right arm.

The court has reviewed Boyd's submissions, and he has provided no documentary evidence that Dr. Glisson caused him harm or could otherwise be liable to him. For this reason, Mr. Boyd is not entitled to damages as to his allegations against Dr. Glisson.

**The Plaintiff's Overall Allegations[1]**

The plaintiff's allegations regarding PTA Barry Spencer's treatment on his neck and arm took place at the Mississippi State Penitentiary starting about September 20, 2020, and continuing until the treatment ended. Further, as the medical records are incomplete (based upon Bates stamps), it is unclear exactly how long the treatment continued or how many physical therapy sessions took place. However, the relevant events appear to have taken place between August 24, 2020 (when Spencer was introduced to Boyd) and September 29, 2020 (Spencer's last treatment of Boyd, as recorded in his medical file).[2] Dr. James Glisson prescribed physical therapy to the plaintiff for his injured arm.

PTA Spencer administered some of the treatment sessions, but, in Mr. Boyd's estimation, used too much force during therapy, causing him excessive pain.[3] According to Boyd, Spencer accused him of "crying like a little girl," saying he would discontinue treatment if Boyd kept complaining. Mr. Boyd agreed to further treatment.

During a one session, Spencer was in a foul mood, smelling of alcohol, and began treating the arm; Boyd again told him that the therapy was extremely painful. Spencer shouted, "If you don't want to do the exercises, I'll just leave. I'm not going to beg you to do them." Mr. Boyd responded, "No, sir, I'm not saying don't want to do my therapy, I just ask if you would not snatch my arm like you have been doing cause I'm hurting from it really bad." Spencer replied, "OK now, let's do them

---

[1] The court has drawn most of the plaintiff's allegations from his complaint and supplements he has provided – and has drawn the dates largely from his medical records. The court will provide additional detail in the chronology, set forth below.

[2] On October 15, 2020, Dr. Glisson referred to Spencer as the "former" PTA; hence, it is clear that Spencer left his position with the Mississippi State Penitentiary sometime between September 29, 2020 (his last recorded treatment of Boyd), and October 15, 2020 (the date of Dr. Glisson's note).

[3] Physical Therapist (PT) Diaz administered some of the treatments during that time, and there is no evidence to suggest that his treatment caused Boyd excessive pain or injury.

or I'm leaving." Boyd responded, "OK," and Spencer began "snatching" his arm saying, "Stretch it out, stretch it out, or I'm doing it for you dammit, little girl." Spencer "snatched" Boyd's arm until he yelled, "Oww man, you hurting." Spencer replied, "Boyd, I [won't] be back to see you. Crying like a little girl." Boyd responded, "Let my arm go man, you are hurting my arm. Let me go, please!" Spencer released his arm and said he was not coming back there to treat him again. It is not clear when that PT session took place.

When Boyd visited Dr. Glisson again, he begged the doctor not to order more physical therapy with Spencer because he had been too rough, causing Boyd pain. Dr. Glisson, however, ordered further physical therapy, and Boyd continued seeing the therapist until he asked Dr. Glisson for pain medication for his shoulder. Dr. Glisson ordered two pain shots for the shoulder and discontinued the treatment.

## Boyd's History of Filing Frivolous Suits

Mr. Boyd has obtained a default judgment against defendant Dr. James Glisson. However, credible documentation is critical in this case because the plaintiff has a lengthy history of filing frivolous lawsuits – alleging serious injuries inflicted during medical care – with absolutely no documentation of such injuries.[4] For example, in another case, the court noted in an order imposing sanctions for filing frivolous lawsuits:

In addition, the court has not noted a single instance where Boyd has offered

---

[4] A partial list of Dean Boyd's frivolous lawsuits regarding infliction of pain during medical care includes: *Boyd v. Sutton*, 4:22CV138-NBB-JMV; *Boyd v. Allegiance Specialty Hospital, et al.*, 4:22CV101-GHD-DAS; *Boyd v. Hughes*, 4:23CV35-GHD-RP; *Boyd v. S&S Management Group, LLC*, 4:22CV65-NBB-DAS; *Boyd v. Hughes*, 4:23CV36-NBB-DAS; *Boyd v. Sutton*, 4:21CV159-GHD-DAS; and *Boyd v. Allegiance Specialty Hospital, et al.*, 4:23CV56-SA-DAS.

- 3 -

documentary evidence (other than his own statements) to support his litany of shocking allegations. Invariably, his medical records reflect that he received some form of treatment, but nothing in those records shows that he was attacked, beaten, tortured, or otherwise mistreated.

*Boyd v. Allegiance Specialty Hospital of Greenville, et al.*, 4:22CV101-GHD-DAS (N.D. Miss.)

Indeed, the sanction imposed in that case was the requirement that, before he may file suit, "for each allegation, he must provide some modicum of documentary evidence tending to show that the events alleged actually occurred." *Id.* Boyd's frivolous cases also feature allegations of terrible abuse, bordering on torture, but with little to no discernible motive, as discussed in that same case:

Boyd does not offer any *motive* for the defendants in these cases, many of whom were strangers to him, to hold such animosity and vitriol towards him – enough to physically attack and torture him. In short, according to Mr. Boyd, many of his medical care providers (including administrators), state and private prison guards and other state and private staff, intentionally harmed him for no reason whatsoever – no matter where he received care – and no matter whether they worked for the state or a private company.

*Id.* (emphasis in original). In sum, in his previously dismissed frivolous cases, Boyd levied shocking allegations of abuse and torture against medical providers and others – allegations for which he could not provide a shred of documentation to support. The sanction merely required Boyd to present at least *some* proof to support each allegation to prevent him from simply making up allegations out of whole cloth.

### Injury in the Present Case

The similarity between the allegations in Boyd's other, frivolous, cases and the present one is striking. In the present case, the plaintiff alleges that PTA Barry Spencer used excessive force while conducting physical therapy on his shoulder – and that Spencer had alcohol on his breath while administering treatment. The plaintiff alleges that Spencer used extreme force during treatment, far in excess of that required for therapy – enough force to further injure his damaged neck and shoulder. As

- 4 -

in his previously dismissed frivolous cases, the alleged motive would not plausibly support the allegation that Dr. Glisson directed Spencer to harm him.

The plaintiff also alleges that, though defendant Dr. James Glisson did not administer the physical therapy, he acted as Spencer's supervisor – directing and allowing the abuse. The plaintiff further alleges that Dr. Glisson threatened him with a Rule Violation Report if he refused physical therapy treatment from Spencer.[5] He states that the treatment injured his shoulder, causing a "ripped, torn tendon, ligaments," "flatten[ed] cartilage," "enlarged rotator," "nerve damage," "inflammation," and "infection around shoulder bones, etc." Other than pain and tenderness in his neck and shoulder – which he has suffered for years – before, during, and after his sessions with Spencer – there is no documentary proof that any of those injuries arose out of PTA Spencer's treatments – given Boyd's long history of these types of neck and shoulder problems.

Boyd alleges that he is currently waiting to undergo "major right shoulder surgery" to treat injuries received from Spencer's alleged use of excessive force during physical therapy. As in his other cases, the plaintiff has alleged no *plausible* motive for either defendant to have intentionally injured him and caused him pain. Given the sanctions the plaintiff has received for filing similar frivolous cases without documentation of injury, under Fed. R. Civ. P. 55(b)(2)(C), the court requires such documentation in the present case.

The sole remaining defendant in this case is Dr. James Glisson, whom the court cannot hold vicariously liable for the actions of Spencer, his subordinate, though the allegation of actively ordering Spencer to conduct excessively rough therapy likely elevates his actions to participation in the events.

---

[5] The court notes that Boyd did not allege retaliation in his complaint; he first presented this allegation after default judgment was entered against Dr. Glisson – in the briefs regarding damages. The court also notes that the plaintiff has alleged (also after default judgment was entered) that Dr. Glisson retaliated indirectly by ordering PTA Spencer to handle Boyd roughly during physical therapy.

*Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) (government official can be held liable only for his own misconduct). As such, the court may only consider the damages caused by Glisson's alleged retaliation against the plaintiff – by directing Spencer to be extremely rough with Boyd – and by threatening him with a Rule Violation Report if he refused additional physical therapy from PTA Spencer.

Further, as discussed above, to make a proper determination of damages, the court requires documentation of the plaintiff's injuries – including the cause of those injuries – in the form of medical records and other documents. To enable the court to calculate damages in this case, the plaintiff may provide documents showing:

(1) The date Dr. Glisson threatened the plaintiff with a Rule Violation Report if he were to refuse further treatment from Spencer;

(2) The reason the plaintiff began physical therapy with defendant Spencer for his injured shoulder (including the cause of the initial shoulder injury and the date of that injury);

(3) The type and severity of the injuries to the plaintiff's shoulder *before* Spencer's treatment, as well as documents showing the type and severity of the plaintiff's shoulder injuries *after* Spencer's treatment;

(4) The dates when Spencer administered physical therapy treatment for the plaintiff's shoulder; and

(5) Any other documents the plaintiff believes will assist the court in making a just determination of damages.

Within the hundreds of pages of documents Boyd provided, unlike in the previous cases, he *has* provided a "some modicum of documentary evidence tending to show that the events alleged actually occurred." *See  Boyd v. Allegiance Specialty Hospital of Greenville, et al.*, 4:22CV101-GHD-DAS

(N.D. Miss.) However, that evidence lends a bit of support as to Boyd's allegations against defendant *Spencer*, not Dr. Glisson, who was mentioned only a handful of times in the voluminous documents provided – and never in a negative light. A chronology sheds light on the events giving rise to the plaintiff's complaint.

### Boyd's Medical Records

Dean Boyd suffers from multiple serious medical issues, including a long history of significant and painful neck and shoulder problems. Indeed, he underwent surgery to fuse two of the vertebrae in his neck on September 11, 2019. Doc. 74, p. 30-31. The surgery was successful to a degree, but pain persisted, which Boyd brought to the attention of medical staff on a regular basis from that time forward. *See, generally*, Doc. 74. He underwent physical therapy on a regular basis, mostly with Physical Therapist (PT) Yuri Diaz, with whom he appeared to have had a good rapport. *Id.*

Dean Boyd met PTA Barry Spencer on August 24, 2020, when PT Diaz introduced them during a physical therapy session. *Id.*, p. 290. Diaz discussed Boyd's treatment plan with Spencer during the visit. *Id.* Indeed, Spencer conducted physical therapy with Boyd multiple times between their August 24 introduction and a September 19, 2020, physical therapy session supervised by Diaz. *Id.*, p. 97, 290-302. For about ten days afterward Boyd underwent additional physical therapy, almost daily including multiple sessions solely with PTA Spencer. *Id.*, p. 80, 81, 83-84, 310, 311.

On September 22, 2020, Dr. Glisson noted:

> Male states he is doing well other than having some right shoulder and neck pain since working out with the PTA Barry [Spencer]. No other complaints and says his pain regimen is good except for today. He has not asked the nurse for pain medication for this.

*Id.*, p. 309. Glisson's assessment was that Boyd had suffered a muscle strain, probably from pushing against resistance with internal rotation of the right shoulder. *Id.* Boyd again complained of shoulder and neck pain to Spencer on a September 24, 2020, visit, and he applied Biofreeze on Boyd's neck to

treat the pain. *Id.*, p. 310. Boyd declined physical therapy with PTA Spencer three days later on September 25, 2020, stating that it was too painful to move his neck. *Id.*, p. 311. Boyd also told a nurse that he was too sore for physical therapy with Spencer that day. *Id.*

The latest date Spencer appears in the medical record is September 29, 2020, when Boyd again declined physical therapy, complaining of pain in his neck and right shoulder. *Id.*, p. 85, 315. Boyd had reported pain in his neck and shoulder to the nurse that day from "being worked hard by the new PT [Spencer]." *Id.* He also complained on October 1, 2020, of shoulder pain from working with a therapist. *Id.*, p. 112-113. He told Nurse Thomas that same day that he wanted to talk to Dr. Glisson about neck pain. *Id.*, p. 342. He made a similar complaint on October 2, 2020, when Nurse Story entered, "c/o pain in his right shoulder. States PT injures are during PT session this week. … [O]ffender states Dr. Glisson is aware of pain in shoulder and injury." *Id.*, p. 113-115. He complained again about "neck pains from intense therapy" the next day to Nurse Kimble. *Id.*, p. 114.

PTA Spencer must have left employment at Parchman shortly thereafter, as, on October 15, 2020, Dr. Glisson made a note in Boyd's chart, noting, "He states that the *former* PT assistant, Barry Spencer, hurt him and caused him muscle spasms." *Id.*, p. 118-119 (emphasis added). Glisson also noted during the visit that, though Boyd complained of severe pain in his right arm, he could use the arm without grimacing, could write on typing paper, and showed no distress during the exam – but grimaced with minimal palpation of right arm. *Id.* During physical therapy with PT Diaz that day, Boyd stated, "Glisson give me shots last Friday. It helps me feel better and sleep well. *Id.*, p. 100. He complained to Nurse Brown on October 29, 2020, "The physical therapist pulled my shoulder out of place[,] … [and] Dr. Glisson gave me some shots for it and it helped but now I'm hurting again." *Id.*, p. 123. He continued to complain about neck and shoulder pain during Nurse Kimble's visit on November 25, 2020, who noted his complaint that the pain has been there "since the PT saw him

months ago …. Pt moved head left and right with no signs of distress." *Id.* Boyd thus told nurses on multiple occasions that Dr. Glisson had treated him and relieved his pain – actions at odds with Boyd's allegations of hostility and a desire to do him harm.

Boyd continued to report neck and shoulder pain (without mentioning injury by a physical therapist) for the next several years. In 2023, he was approved for a second surgery to relieve neck pain, but the Free World surgeon would not conduct it. Doc. 74, p. 250, 254. He was referred to the University of Mississippi Medical Center for surgery, but was denied, and Medical Director Dr. Colette Scott stated, "[W]e are actively seeking another orthopedist who accepts MDOC patients to review and manage your case." *Id.* He was being seen regularly by his provider and undergoing pain management. *Id.* Boyd's neck pain persists to the present.

### No Evidence of Retaliation

Dean Boyd has alleged that Dr. Glisson retaliated against him by ordering his subordinate to hurt him during physical therapy sessions and by threatening him with prison Rule Violation Reports if he refused to take part in those sessions. He has not, however, provided evidence to support those allegations. Prison officials may not retaliate against prisoners for exercising their constitutional rights. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). On the other hand, courts must view such claims with skepticism to keep from getting bogged down in every act of discipline prison officials impose. *Id.*

The elements of a claim under a retaliation theory are the plaintiff's invocation of "a specific constitutional right," the defendant's intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, *i.e.*, "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995) (citations omitted ), *cert. denied*, 516 U.S. 1084, 116 S. Ct. 800, 133 L. Ed. 2d 747 (1996). A prisoner seeking

to establish a retaliation claim must also show that the prison official's conduct was sufficiently adverse so that it would be capable of deterring a person of ordinary firmness from exercising his constitutional rights in the future. *Winding v. Grimes*, 4:08CV99-FKB, 2010 WL 706515 at 3 (S.D. Miss. Feb. 22, 2010); *citing Morris v. Powell*, 449 F.3d 682, 684–85 (5th Cir. 2006) at 685. A single incident involving a minor sanction is insufficient to prove retaliation. *Davis v. Kelly*, 2:10CV271-KS-MTP (citing *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999), 2:10CV271-KS-MTP, 2012 WL 3544865 *Id.*). Similarly, inconsequential (*de minimis*) acts by prison officials do not give rise to an actionable retaliation claim. *See Morris* at 685.

In this case, Boyd must prove that he engaged in constitutionally protected activity (seeking redress for grievances), faced significant adverse consequences, and that such action was taken "in an effort to chill [his] access to the courts or to punish [him]for having brought suit." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1296 (5th Cir.), *cert. denied*, 513 U.S. 926, 115 S. Ct. 312, 130 L. Ed. 2d 275 (1994); *see also Serio v. Members of Louisiana State Board of Pardons*, 821 F.2d 1112, 1114 (5th Cir.1987). The showing in such cases must be more than the prisoner's "personal belief that he is the victim of retaliation." *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995). *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997).

The Fifth Circuit has made clear the dangers of permitting retaliation claims to proceed in the absence of factual allegations to support an inference of a retaliatory motive. In *Whittington v. Lynaugh*, 842 F.2d 818, 819 (5th Cir. 1988), the plaintiff, Daniel Johnson, had filed numerous lawsuits against administrators and staff within the Texas prison system. The defendants then denied Johnson's request to have his custody status upgraded, and Johnson alleged that the denial was in retaliation for filing his previous suits. *Id.* The Fifth Circuit rejected Johnson's claim – and explained why courts must insist upon specific factual allegations to support an inference of retaliation:

> If we were to hold that [Johnson] by his allegations in this case had established a case which was entitled to the full panoply of discovery, appointment of counsel, jury trial and the like, we would be establishing a proposition that would play havoc with every penal system in the country. Prison administrators must classify and move prisoners. It is a virtual truism that any prisoner who is the subject of an administrative decision that he does not like feels that he is being discriminated against for one reason or another, such as the past filing of a grievance, a complaint about food or a cellmate, or a prior complaint that he was not being treated equally with other prisoners. If we were to uphold the further pursuit of [Johnson's] complaint in this case we would be opening the door to every disgruntled prisoner denied the next level of trustyship, reassigned to another prison job, moved to another cell, [or] claiming his shoes were uncomfortable, to bring such a suit.

*Whittington v. Lynaugh*, 842 F.2d 818, 819 (5th Cir. 1988).

Prisoners routinely file grievances against prison staff on an ongoing basis, for any number of reasons. As such, it is not uncommon for a prisoner to file a grievance or a lawsuit, then receive a Rule Violation Report sometime thereafter. Thus, to avoid turning nearly every charge of prison rule violations against a prisoner into a claim of retaliation, courts insist upon additional allegations or evidence to substantiate a retaliation claim, such as prison staff issuing threats of disciplinary action if an inmate files further grievances, staff members pulling an inmate aside to threaten him, members of prison staff perpetrating unprovoked acts of violence against an inmate, or prison staff members wholly fabricating charges of prison rule violations against an inmate. *See Decker v. McDonald*, 2010 WL 1424322 (E.D. Tex. 2010) (Magistrate Judge's Report and Recommendation) (unpublished), adopted by the District Court, 2010 WL 1424292 (E.D. Tex.) (unpublished). As discussed below, Boyd has not supported his allegations of retaliation with evidence.

### No Documentary Proof That Dr. Glisson Threatened Boyd or Directly or Indirectly Caused Him Harm

The gravamen of Mr. Boyd's allegations against Dr. Glisson is that he directed PTA Barry Spencer to aggressively conduct physical therapy with the intent to cause harm – and threatened Boyd with a prison rule violation if he declined therapy. Boyd complained multiple times to medical staff that aggressive physical therapy with PTA Spencer caused injury and pain in his neck and right

shoulder. These contemporaneous complaints lend support to his allegation that PTA Spencer provided unnecessarily rough physical therapy. However, other than Boyd's bare allegations (first arising after default judgment), there is no documentary evidence to support his claim that Dr. Glisson directed Spencer to roughly handle and injure him – or threatened him with a Rule Violation Report if he refused physical therapy.[6]

As shown in the chronology above, the evidence Boyd has submitted to the court shows that Dr. Glisson provided care to relieve his pain – and provided testing and treatment for his injured neck. It appears that PTA Spencer provided physical therapy to Boyd for a little over a month: from the day they met on August 24, 2020, through Spencer's last documented treatment on September 29, 2020. Spencer had left employment with the Mississippi State Penitentiary by October 15, 2020, as Dr. Glisson noted in Boyd's chart. Hence, any retaliation Dr. Glisson might have taken by directing PTA Spencer to injure Boyd (as alleged) – or threats of Rule Violation Reports – could only have occurred between those dates.

Dr. Glisson's notes and Boyd's communication with medical staff show that Glisson merely provided, recommended, or approved medical treatment – to Dean Boyd's admitted benefit – before, during, and after the time Spencer was present at Parchman. On June 1, 2020 (before Boyd's encounters with PTA Spencer), Dr. Glisson was monitoring Boyd's condition after his 2019 surgery. Doc. 74, p. 86. On August 8, 2020, (also before Boyd met Spencer), PT Diaz noted, "Dr. Glisson is willing to get [Boyd] an appointment for MRI, just waiting for patient decision." Doc. 74, p. 320. Boyd first met PTA Spencer on August 24, 2020. *Id.*, p. 290. Dr. Glisson examined Boyd on

---

[6] Indeed, medical records reflect that Boyd declined physical therapy on a regular basis before, during, and after his encounters with PTA Spencer, and he has submitted no documents showing that he received a Rule Violation Report for that reason – or was threatened with one.

September 22, 2020 (during the time relevant to Boyd's allegations), noting his complaints about Spencer's rough treatment – and noting that Boyd had not requested medication for pain despite those complaints. *Id.*, p. 309.

Dr. Glisson again examined Boyd on October 15, 2020 (after PTA Spencer had left Parchman) – noting his condition and his complaints about Spencer. *Id.*, p. 118-119. On October 29, 2020, he told Nurse Brown, "Dr. Glisson gave me some shots for it and it helped but now I'm hurting again." *Id.*, p. 123.

The documentary evidence (including Boyd's positive reports to other medical staff), of Dr. Glisson's examinations, monitoring, and care stands in stark contrast to the allegation that Dr. Glisson said:

> [Neurologist Dr. Menarvia Nixon Gaddis is] my colleague. She is my friend. A good person. You gonna pay for [filing a lawsuit against her,] Boyd. And stop flirting with Nurse Shauna Nguyen, P.A. That is my girlfriend. Don't. I'm gonna be in your chest every time I see you in her face.
>
> …
>
> You gonna do physical therapy sessions every day and you gonna get your a _ _ out that bed and sit in that geri chair four (4) hours every day. Don't. I'm gonna write you a Rule Violation Report (RVR) and have you moved out of my hospital. I told you. You gonna pay for not going back to see your neurologist and for putting a lawsuit against her. And you gonna stay out of Nurse Nguyen['s] face. Don't. I'm going to be back in your chest.

Doc. 72, p. 5. According to Boyd, Dr. Glisson then told PT Yuri Diaz to "get [Boyd's] a _ _ out that bed into that geri chair, and I want intense physical therapy sessions on him every day. Drive him hard; I mean it. Boyd is nothing but a crybaby about everything and it's gonna stop." *Id.* The court notes that the plaintiff has not alleged that PT Diaz harmed him; nor does his medical record reflect misconduct by Diaz. Indeed, Boyd refused physical therapy on multiple occasions without receiving a Rule Violation Report, and, in any event, declining medical treatment does not constitute a prison rule violation.

- 13 -

There is no doubt that Mr. Boyd has serious and painful medical problems, and he complained to medical staff multiple times regarding rough physical therapy with PTA Spencer. Indeed, he alleges that he is quadriplegic, except for one of his limbs. According to his medical records, he has also suffered from bowel incontinence and a host of other issues. Incarceration under these conditions is undoubtedly difficult and unpleasant.

However, as was the case in his numerous prior lawsuits, there is no documentary evidence at all that Dr. Glisson instructed Spencer (or anyone else) to harm Boyd. Indeed, Boyd's outrageous and wholly unsupported allegations against Dr. Glisson track with similar allegations from his prior suits dismissed as maliciously filed: that "many of his medical care providers (including administrators), state and private prison guards and other state and private staff, intentionally harmed him for no reason whatsoever – no matter where he received care." *Boyd v. Allegiance Specialty Hospital of Greenville, et al.*, 4:22CV101-GHD-DAS (N.D. Miss.) Further, the motive Boyd has attributed to Dr. Glisson for allegedly retaliating against him is thin gruel, at best. Boyd claims that he was flirting with – and "got in the face" of Nurse Nguyen, who was allegedly Dr. Glisson's girlfriend.[7] Boyd also alleges that Dr. Glisson was angry with him for filing a lawsuit against neurologist Dr. Menarvia Nixon Gaddis, allegedly Dr. Glisson's friend and colleague. The plaintiff has provided neither documentary evidence to show that Nurse Nguyen was dating Dr. Glisson, nor evidence that he was such a close friend of Dr. Gaddis that he might seek to punish Boyd with physical harm for suing her. In addition, if, as alleged, Dr. Glisson had threatened Boyd with rough physical therapy at the hands of PTA Spencer, Boyd would not have needed to report that rough treatment to Dr. Glisson (which he did). These allegations are not credible.

---

[7] Given Boyd's quadriplegic condition, it seems doubtful that he got in "Nurse Nguyen['s] face." Doc. 72, p. 5.

- 14 -

- 15 -

## Conclusion

Ultimately, despite the voluminous record Boyd has provided, he has offered no documentary evidence to support his claim that Dr. Glisson ordered PTA Spencer to harm him or to threaten him with Rule Violation Reports; instead, the evidence leads to the opposite conclusion. For this reason, the court finds that Mr. Boyd is not entitled to damages against the sole remaining defendant, Dr. Glisson. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 3rd day of August, 2026.

_____
SENIOR U.S. DISTRICT JUDGE